<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| BRENDA G. MINION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| KEYSTONE AMERIHEALTH | : |
| CARITAS, | : |
| | : |
| Defendant. | : |

Civil No. 16-5454 (RBK/JS)

**OPINION**

**KUGLER**, United States District Judge:

        This matter comes before the Court on the Motion to Reopen (Doc. No. 65) and Motion for Judge Preference (Doc. No. 67) filed by *pro se* Plaintiff Brenda G. Minion. Plaintiff claims that she was terminated from her job in retaliation for exercising her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., and Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq*., and now seeks redress. Even though this litigation has been going on for nearly four years, it has yet to progress past the motion-to-dismiss stage; Plaintiff is presently seeking to file her second Amended Complaint (Doc. No. 63 ("SAC")). For the reasons set forth below, Plaintiff's Motion to Reopen is **GRANTED IN PART** and her Motion for Judge Preference is **DENIED**.

I.      **BACKGROUND**

        **A.  Factual Background**

        Plaintiff was an employee of Defendant Amerihealth Caritas. (SAC at 4). As of May 2020, Plaintiff had twenty-five years of experience in her field and held a Master of Science in

Management and Healthcare Administration.[1] (*Id.* at 5) At some point,[2] Plaintiff underwent a lumbar fusion. (*Id.* at 4). Due to this procedure, Plaintiff was limited in her ability to drive, sit, stand, bend, and walk, and required an ergonomic work-station and ten-minute breaks every hour in order to work. (*Id.*). To accommodate Plaintiff's medical restrictions, Defendant approved certain accommodations for her, including allowing her to work from home. (*Id.*). Plaintiff claims that these accommodations were made pursuant to the ADA.[3] (*Id.*). Although she was authorized to work from home, Plaintiff's supervisor, Nakeyia Jenkins, and her manager, Keith Ogden, instructed her to report to Defendant's International Plaza location. (*Id.*).

Plaintiff traveled to and from work for three days. (*Id.*). Each trip to and from work lasted one hour and fifteen minutes. (*Id.*). While at work, Plaintiff did not have access to an ergonomic work-station and was not able to take ten-minute breaks every hour. (*Id.*). Plaintiff's medical condition was inflamed by having to come into work. (*Id.*). Ogden told Plaintiff to "stay in [her] lane." (*Id.* at 5).

Eventually, Defendant's human resources ("HR") managers became aware that Plaintiff was working in the office even though she was supposed to be working from home. (*Id.*). Mike Greevy, the HR Director, told Ogden and Jenkins that Plaintiff's presence in the office was a liability because she was supposed to be working from home pursuant to an approved ADA accommodation. (*Id.*). Greevy asked Plaintiff why she was coming in to work, and she told him it was because Ogden had told her to stay in her lane. (*Id.*). On October 20, 2014, Greevy told Plaintiff to resume working from home.

---

[1] The Amended Complaint does not specify what Plaintiff's field was, what department she worked in while employed by Defendant, nor what her job responsibilities were.
[2] Plaintiff's Amended Complaint frequently fails to specify when events occurred, leaving the Court guessing.
[3] At the present time, the Court takes no position as to whether the ADA actually required Defendant to offer these accommodations to Plaintiff. However, it is potentially relevant if Plaintiff and/or Defendant believed the ADA required Defendant to accommodate Plaintiff.

After October 20, 2014, Plaintiff was constantly subjected to questions about her productivity and the integrity of her work, and her managers did not respond to her emails. (*Id.* at 5). She was also subjected to "corrective actions." (*Id.* at 4). All of these actions distracted Plaintiff and impeded her ability to work. (*Id.* at 5). She also came to believe that unknown parties were manipulating the perception of her in an unfavorable way. (*Id.*). She raised these issues with Ogden. (*Id.*). Shortly thereafter, Plaintiff learned from Diane Zumbach, an HR Partner, that she was on a list that prevented her from being considered for any positions outside of her department. (*Id.*).

By June 10, 2015, Plaintiff had addressed the "corrective actions," but management continued to ignore her. (*Id.* at 4). Plaintiff applied for and received approval to take leave pursuant to the FMLA in order to address "medical condition flare-ups" and "uncontrolled diabetes." (*Id.*). Later in 2015, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*).

At some point, Plaintiff's insurance company informed her neurosurgeon's office that her insurance had been terminated. (*Id.*). When Plaintiff contacted her insurance company about this issue, her insurer told her to contact her employer. (*Id.*). When Plaintiff contacted Defendant, she did not receive any explanation. (*Id.*). Shortly thereafter, she received a letter from Diane Lee Newman, counsel for Defendant, stating that her employment was terminated effective January 3, 2016. (*Id.*).

**B.  Procedural History**

On September 8, 2016, Plaintiff filed this suit seeking reinstatement with the company, reimbursement of her full annual compensation, and that her complaint or any record of the dispute be sealed from prospective employers. (Doc. No. 1). Plaintiff filed a Motion for Reinstatement of

Employment and $73,404 on March 30, 2017. (Doc. No. 11). After months of service issues, United States Marshals served Defendant with Plaintiff's Complaint on August 22, 2017. (Doc. No. 16; Doc. No. 18). Defendant subsequently filed a Motion to Dismiss on September 12, 2017 (Doc. No. 27). This Court dismissed Plaintiff's Motion for Reinstatement of Employment and $73,404 on October 20, 2017 (Doc. No. 31). Plaintiff filed a Motion for Combined Compensatory and Punitive Damages on November 3, 2017 (Doc. No. 37). Plaintiff also filed motions to seal on November 3, 2017 and February 1, 2018. (Doc. No. 38; Doc. No. 40).

On March 29, 2018, the Court granted Defendant's Motion to dismiss, dismissed Plaintiff's Motion for Combined Compensatory and Punitive Damages as moot, denied Plaintiff's first Motion to Seal, and denied Plaintiff's second Motion to Seal. *Minion v. Keystone Amerihealth Caritas*, No. 16-5454, 2018 WL 1535211 (D.N.J. Mar. 29, 2018). The Court gave Plaintiff leave to amend her complaint by April 11, 2018. *Id.* at *4. On April 6, 2018, Plaintiff requested an extension of this deadline, (Doc. No. 44), which the Court granted, allowing her until April 18, 2018 to file an amended complaint, (Doc. No. 45). Hearing nothing from Plaintiff, the Court dismissed her Complaint without prejudice for failure to prosecute and failure to follow the Court's Order on June 11, 2018. (Doc. No. 48).

On June 29, 2018, Plaintiff filed a Motion for Reconsideration (Doc. No. 48) of the Court's dismissal of her Complaint. (Doc. No. 48). The Court denied this motion on January 8, 2019. (Doc. No. 52). Plaintiff appealed the Court's June 11, 2018 and January 8, 2019 Orders to the Third Circuit. (Doc. No. 53). On February 28, 2019, Plaintiff filed her first amended complaint. (Doc. No. 57). On March 1, 2019, the Court dismissed this amended complaint without prejudice. (Doc. No. 61).

On December 30, 2019, the Third Circuit dismissed Plaintiff's appeal for lack of jurisdiction, finding that the June 11, 2018 Order was not a "final" order within the meaning of 28 U.S.C. § 1291. (*See* Doc. No. 62). The Third Circuit's Order did not vacate or reverse any of this Court's Orders in this case. (*Id.*). On January 6, 2020, Plaintiff filed her second Amended Complaint (henceforth, the "Amended Complaint"). On January 7, 2020, the Court dismissed Plaintiff's Amended Complaint without prejudice, explaining that, in light of the Court's prior Orders, Plaintiff did not have leave to file an amended complaint. (Doc. No. 64). Plaintiff informed Plaintiff that in order for her to proceed, she must either file a motion to reopen her case or initiate a new case. (*Id.*). On January 9, 2020, Plaintiff filed a Motion to Reopen her case and to file her Amended Complaint, and on January 27, 2020, filed her Motion for Judge Preference.

While Plaintiff's Amended Complaint only indicates that Plaintiff is pursuing claims under the ADA, her response to Defendant's Opposition brief (Doc. No. 68) indicates that she is also attempting to bring a claim under the FMLA.

## II.     LEGAL STANDARD

### A.  Motion for Judge Preference

Plaintiff's Motion for Judge Preference is best construed as a motion for recusal. The standard for recusal of district court judges is set by 28 U.S.C. §§ 455 and 144. Under Section 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which is impartiality might reasonably be questioned." Additionally, under Section 455(b)(1), a judge must disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of dispute evidentiary facts concerning the proceeding."

"Under § 455(a), if a reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality under the applicable standard, then the judge must

recuse." *In re Prudential Ins. Co. of America Sales Practices Litig.,* 148 F.3d 283, 343 (3d Cir. 1998); *see Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir. 1997) ("The standard for recusal is whether an objective observer reasonably might question the judge's impartiality."). Consequently, even where the judge is not "subjectively biased or prejudiced," he must recuse himself under § 455 "so long as he appears to be so." *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 320 (3d Cir. 2005). Such disqualification is crucial to maintaining "the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." *In re Sch. Asbestos Litig.,* 977 F.2d 764, 776 (3d Cir. 1992).

Pursuant to § 144, a judge shall be prohibited from proceeding in a matter "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice against him . . . ." 28 U.S.C. § 144. "The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . . ." *Id.* "A party seeking recusal need not show actual bias on the part of the court, only the possibility of bias." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 343 (3d Cir. 1998).

To be "legally sufficient," the reasons and facts in the affidavit must "give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Berger v. United States,* 255 U.S. 22, 33-34 (1921). "On such a motion it is the duty of the judge to pass only on the legal sufficiency of the facts alleged to ascertain whether they support a charge or bias of prejudice. Neither the truth of the allegations nor the good faith of the pleader may be questioned, regardless of the judge's personal knowledge to the contrary." *Mims v. Shapp*, 541 F.2d 415, 417 (3d. Cir. 1976). Similar to the standard under § 455, "[t]he test is whether,

6

assuming the truth of the facts alleged, a reasonable person would conclude that a personal as distinguished from a judicial bias exists." *Id.*

"[G]enerally beliefs or opinions which merit recusal must involve an extrajudicial factor." *United States v. Antar,* 53 F.3d 568, 573–79 (3d Cir. 1995). Although in certain instances opinions formed during a judicial proceeding may give rise to a duty to recuse, "[b]ecause the focus is on the source of the judge's views and actions, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion because they almost never arise from an extrajudicial source." *United States v. Bertoli*, 40 F.3d 1384, 1412 (3d Cir. 1994).

"Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555 (1994). "[N]ot subject to deprecatory characterization and 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." *Id.* at 551.

### B.  Motion to Reopen

Plaintiff's Motion to Reopen is effectively a motion for leave to file an amended complaint. Amendments to pleadings are governed by Federal Rule of Civil Procedure 15(a), which states that leave to amend "shall be freely given as justice so requires." The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Leave to amend under Rule 15 should be denied only in certain circumstances, such as

undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or clear futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Fed. Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 874 (3d Cir. 1994). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). A claim is "futile" if it would not survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.*

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

Because Plaintiff is proceeding *pro se*, she is held to "less stringent standards" than she would be if represented by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted).

## III.   DISCUSSION

### A.   Motion for Judge Preference

Plaintiff argues that this case should be reassigned to a different judge because the Court and defense counsel, Diane Lee Newman, are both graduates of Rutgers Law School. (Doc. No. 67). Plaintiff has not demonstrated that the Court and Newman have any other sort of personal or professional relationship, nor is the Court aware of any. "Inconsequential alumni contacts of this type would not cause a reasonable person to question the court's impartiality." *United States v. Adams*, No. 08-242, 2009 WL 62170, at *2 (M.D. Pa. Jan. 8, 2009) (citing *Okpor v. Rutgers, State Univ. of N.J.*, 196 F. App'x 129, 132 (3d Cir. 2006)) (finding that district judge was not required to recuse himself where he was a graduate of the same law school as the victim of the defendant's crime); *see also United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1076 (9th Cir. 1998) (finding recusal not required where judge was a graduate of the law school of a university with which the defendants were affiliated); *Lunde v. Helms*, 29 F.3d 367, 370–71 (8th Cir. 1994) (finding recusal not required where judge was a graduate of the defendant-university's law school, made monetary contributions to the law school, and participated in educational programs at the university). Accordingly, Plaintiff's motion is denied.

### B.   Motion to Reopen

Although Defendant expresses understandable frustration with the tortured procedural history of this case, it does not argue that Plaintiff is acting in bad faith, nor that it will suffer any prejudice if Plaintiff is allowed to file her Amended Complaint. (Doc. No. 66 ("Def. Brief")). Rather, Defendant's sole argument is that Plaintiff's allegations are too conclusory to state a claim, and that therefore her effort to amend is futile. (*Id.* at 7). As such, the Court will solely examine whether the Amended Complaint would survive a Rule 12(b)(6) motion to dismiss.[4]

> i. *FMLA Claim*

The FMLA provides eligible employees the right to twelve weeks of leave during a twelve-month period for, among other reasons, "a serious health condition that makes the employee unable to perform the functions of" his or her position. 29 U.S.C. § 2612(a)(1); *see also Conoshenti v. Public Serv. Elec. & Gas. Co.*, 364 F.3d 135, 141 (3d Cir. 2004). Employees who take leave pursuant to the FMLA are entitled to certain protections. For example, an employer may not "interfere with, restrain, or deny [an employee's] exercise of or attempt to exercise" his or her rights under the FMLA (otherwise known as an "interference claim"). 29 U.S.C. § 2615(a)(1); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012). Further, an employer may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" (otherwise known as a "retaliation claim"). *Id.* at § 2615(a)(2); *see also Lichtenstein*, 691 F.3d at 301.

Plaintiff contends that the she was "humiliated, denied job opportunities, and wrongfully terminated from her job" because she took leave Defendant approved pursuant to the FMLA. (SAC at 4). As such, Plaintiff appears to be bringing a retaliation claim. To establish a *prima facie*

---

[4] In additional to AmeriHealth Caritas, Plaintiff's Amended Complaint also names Newman as a defendant. (SAC at 2). However, Plaintiff does not plead any facts suggesting that she has a viable cause of action against Newman. Thus, Plaintiff's effort to name Newman as a defendant is futile.

retaliation case under the FMLA, "the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein*, 691 F.3d at 302.

Even assuming that Plaintiff has met the first two elements of her *prima facie* case, she has not shown the third, causation. FMLA plaintiffs can establish causation if the "temporal proximity" between their protected activity and the adverse decision is "unduly suggestive" or if the totality of their allegations is sufficient to raise the necessary inference. *Lichtenstein*, 691 F.3d at 307 (internal quotation omitted). In this case, Plaintiff has failed to specify when she took FMLA leave, making it impossible to determine if there is any temporal proximity between her leave-taking and Defendant's decisions not to promote her and to terminate her employment, and the remainder of Plaintiff's allegations are similarly insufficient to raise the necessary inference that these actions were motivated by retaliatory animus. As such, Plaintiff's FMLA claim would not survive a Rule 12(b)(6) motion to dismiss.

### ii.   ADA—Retaliation

While the ADA provides a cause of action both for discrimination on the basis of disability, Plaintiff only appears to be attempting to state a retaliation claim. In order to make out an ADA retaliation claim, the plaintiff does not need to show that she has a disability. *Stouch v. Twp. of Irvington*, 354 F. App'x 660, 667 (3d Cir. 2009). Rather, the plaintiff establishes a *prima facie* case of unlawful retaliation if she proves: (1) that she was engaged in a protected activity; (2) adverse action by the defendant contemporaneous with or after the protected activity; and (3) a causal connection between the protected activity and the adverse action. *Id.* An individual has engaged in protected activity under the ADA if she has "'opposed any act or practice made unlawful by [the ADA]' or who has 'made a charge, testified, assisted, or participated in any

11

manner in an investigation, proceeding, or hearing' under the ADA." *Id.* (quoting 42 U.S.C. § 12203(a)). As such, the ADA protects individuals who "oppose" potential ADA violations or who "participate" in investigations into such violations. Further, "although a plaintiff in a retaliation case need not prove the merits of the underlying discrimination complaint, she must have acted under a good faith, reasonable belief that a violation existed." *Id.* (internal quotation omitted).

### 1.  "Opposing" an ADA Violation

Under the ADA's "opposition" clause, protected activity "includes not only an employee's filing of formal charges of discrimination against an employer but also informal protests of discriminatory employment practices, including making complaints to management." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (internal quotation omitted).[5] In *Crawford v. Metropolitan Government of Nashville and Davidson County*, the Supreme Court held that that Title VII's opposition clause applies not only when an employee reports discrimination of her own accord, but also when she reports discrimination in response to a question. 555 U.S. 271, 277–78 (2009) (explaining that "[w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity" (internal quotation omitted)). The *Crawford* plaintiff was asked by a human resources officer whether she had observed any inappropriate behavior on the part of a supervisor. *Id.* at 274. The plaintiff responded by describing several instances when she observed the supervisor engaging in sexually harassing behavior. *Id.* While the plaintiff did not explicitly label the supervisor's acts as "discriminatory" or "harassing" during her conversation with the officer, the Court still found her responses to be in opposition to

---

[5] Although *Daniels* was addressing the anti-retaliation provisions of Title VII and the Age Discrimination in Employment Act, these provisions are virtually identical to the ADA's anti-retaliation provision, leading courts to construe them together. *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).

the other employee's actions, in part because the procedural posture of the case required the Court to draw all reasonable inferences in the plaintiff's favor. *Id.* at 277 n.2.

Plaintiff alleges that after Greevy learned of her return to work, he notified Ogden and Jenkins of the risk of legal liability resulting from Plaintiff's presence in the office when she was supposed to be working from home pursuant to an approved ADA accommodation. (SAC 5). Greevy then investigated the situation by asking Plaintiff why she had returned to the office, at which point she told Greevy that Ogden had compelled her to return to work. (*Id.*). Therefore, just as in *Crawford*, a human resources officer questioned Plaintiff as part of an inquiry into a possible violation of a federal civil rights statute, and Plaintiff responded by describing a specific act taken by a supervisor that possibly contravened the statute. While Plaintiff did not explicitly label Ogden's action as discriminatory in her response to Greevy, at this stage the Court must draw the inference that her comment was in opposition to his action.[6]

### 2.   Objectively Reasonable Belief

Plaintiff must also demonstrate that she held an objectively reasonable belief that the conduct she described to Greevy violated the ADA. While Plaintiff has adequately alleged that she believed Ogden's actions violated that ADA, she must also show that a "reasonable person could have believed that the conduct of which she complained constituted [disability] discrimination under [the ADA]." *Daniels*, 776 F.3d at 194 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001)). In order for a plaintiff to establish a *prima facie* case of discrimination under the ADA, she must show that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment

---

[6] The Court is further obliged to construe Plaintiff's allegations liberally due to her *pro se* status.

decision as a result of discrimination." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (internal quotation omitted). Further, "[d]iscrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Id.* (citing 42 U.S.C. § 12112(b)(5)(A)).

A reasonable person could have believed that Ogden was failing to make reasonable accommodations for Plaintiff's disabilities. Plaintiff has alleged that due to her lumbar fusion, she was not supposed to drive, she required the use of an ergonomic work-station, and she needed to take a ten-minute break every hour. (SAC at 4). By requiring Plaintiff to come into the office, Ogden was forcing her to drive, and at the office Plaintiff did not have access to an ergonomic work-station, nor was she able to take a ten-minute break every hour. (*Id.*). As such, Plaintiff has clearly alleged that Ogden was denying her the accommodations her condition required—the only issue is whether that condition qualified as a disability under the ADA.

A "disability" under the ADA includes: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The "regarded as" category of disability does not apply to "impairments that are transitory and minor"; an impairment is "transitory" if it has "an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Plaintiff alleges she was limited in her ability to perform various life activities for an undefined period of time following her lumbar fusion. (SAC at 4). Plaintiff's Amended Complaint contains no affirmative statement that she remains subject to these limitations, and her use of the

14

past-tense suggests that they have abated.[7] (*Id.* at 4–5). As such, the Amended Complaint indicates that Plaintiff's impairment due to her lumbar fusion was temporary. Nevertheless, Plaintiff's impairment still qualifies as a disability under the ADA.

Prior caselaw in this Circuit indicated that "temporary, non-chronic impairments of short duration are not disabilities." *Cunningham v. Novo Nordisk*, No. 12-6654, 2014 WL 1318390, at *5 (E.D. Pa. Apr. 1, 2014) (finding that individual's period of incapacity following a heart attack and quadruple bypass surgery did not qualify as a disability), *aff'd* 615 F. App'x 97 (3d Cir. 2015); *see also Hershgordon v. Pathmark Stores, Inc.*, 285 F. App'x 846 (3d Cir. 2008) (finding that employee did not have a disability under the ADA where his employer only viewed him as temporarily incapable of working following back surgery); *Rinehimer v. Cemolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002) (finding that impairment of ability to breathe caused by temporary pneumonia was not a disability under the ADA). Effectively, courts read the term "impairment" in Section 12102 to implicitly exclude "temporary" impairments.

Such a reading of the term "impairment" is no longer tenable. In 2009, the ADA was amended by the addition of Section 12102(3)(B) to exclude "transitory and minor" impairments from the "regarded as" category of disability. *See* Pub. L. No. 110–325, 122 Stat. 3553. Recently, the Third Circuit held that this exception only applies if the impairment is both transitory, meaning lasting for less than six months, *and* minor, meaning "objectively non-serious". *Eshleman v. Patrick Indus.*, No. 19-1403, 2020 WL 2781300, at *4–5 (3d Cir. May 29, 2020). Given the Third Circuit's holding in *Eshleman*, the term "impairment" in Section 12102(2)(C) must encompass limitations that are "transitory," or else there would be no reason for the term to be included in the

---

[7] Plaintiff alleges that she continues to suffer from mental and physical distress, but she does not connect these symptoms to her lumbar fusion. (SAC at 5). Rather, she indicates that that these symptoms are the result of her experiences with Defendant and this ongoing litigation. (*See id.* (noting that Plaintiff suffers "headache due to procedural law")).

Section 12102(3)(B) exception. *See City of Phila. v. Attorney Gen.*, 916 F.3d 276, 289 (3d Cir. 2019) (explaining that "[t]he canon against surplusage counsels us to give effect to every word of a statute" (internal quotation omitted)). Because the same term should be construed consistently throughout a statute, the term "impairment" must encompass "transitory" limitations throughout Section 12012. *See, e.g.*, *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019) (noting the "normal presumption that, when Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout"); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) (applying the "standard principle of statutory construction provid[ing] that identical words and phrases within the same statute should normally be given the same meaning").

Therefore, Sections 12102(1)(A) and (B) cover even "transitory" or "temporary" impairments, so long as those impairments substantially limit a major life activity. Plaintiff has alleged that she was substantially limited in her ability to walk and to bend in the aftermath of her lumbar fusion, both of which are major life activities under the ADA. 42 U.S.C. § 12102(2)(A). Consequently, Plaintiff has adequately alleged that she had a disability at the time of her conversation with Greevy, meaning that she had an objectively reasonable belief that Ogden's conduct violated the ADA, and therefore that she engaged in protected activity.

### 3.  Causation

There is no question that Plaintiff's termination constitutes an adverse employment decision under the ADA. As such, the only remaining issue is whether Plaintiff can show that her termination was causally connected to her comments to Greevy. The standard for causation under the ADA is the same as under the FMLA—"unduly suggestive" temporal proximity or a totality

of the circumstances. *Petti v. Ocean Cty. Bd. of Health*, No. 19-2137, 2020 WL 1527759, at \*4 (3d Cir. Mar. 31, 2020).

In this case, the roughly fourteen-month gap between Plaintiff's conversation with Greevy and her termination is not sufficiently "unduly suggestive" to establish causation on its own. However, plaintiffs may also establish causation by showing a "pattern of antagonism" by the employer stretching between the protected activity and the adverse action. *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017). Plaintiff alleges that, after her conversation with Greevy, her managers began to constantly question her effort, misrepresent her productivity, and ignore her emails. (SAC at 5). She also alleges that after bringing these issues to Ogden's attention, she was placed on a list that prevented her from being considered for positions outside of her department. (*Id.*). Given these allegations, Plaintiff has adequately presented a pattern of antagonism that is sufficient, when combined with the temporal proximity of her protected activity and her termination, to establish causation. Consequently, Plaintiff has made out her *prima facie* case, meaning that her attempt to amend her ADA retaliation claim is not futile.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judge Preference is **DENIED** and her Motion to Reopen is **GRANTED IN PART**. Plaintiff is granted leave to refile her Amended Complaint (Doc. No. 63) upon the condition that Plaintiff's FMLA claim and all of Plaintiff's claims against Diane Lee Newman be dismissed. Subject to this condition, Plaintiff may refile her Amended Complaint on or before June 29, 2020. An Order follows.


Dated: 06/08/2020                                   /s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge